08 C 1097

JUDGE KOCORAS
MAGISTRATE JUDGE SCHENKIER

# EXHIBIT C

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

CHRISTOPHER LEWIS
DIRECT DIAL: 212.692.1004
*E-MAIL:* clewis@duanemorris.com

*www.duanemorris.com*

August 24, 2006

VIA FACSIMILE and FEDEX

The Arbitration Panel
c/o Ms. Alma Sabanovic
NASD Dispute Resolution, Inc.
10 LaSalle Street
Suite 1110
Chicago, IL 60603-1002

**Re:** Robert Sam Jr., Karen K. Auksi-Sam and Northstar Basements, Inc. v. Edward Jones
NASD-DR Arbitration Number 06-02742

Members of the Panel:

Please accept this submission as the Answer and Counterclaim of Respondent Edward D. Jones & Co., L.P. (hereinafter, "Edward Jones" or "Respondent") to the Statement of Claim in the above referenced arbitration. This Answer is not intended to respond allegation by allegation, but is rather a summary of Edward Jones' responses to the allegations of this claim. To the extent any allegation is not addressed directly, it is denied. Edward Jones expressly reserves its right to amend this Answer should facts material to this action become apparent during discovery.

The Statement of Claim is, respectfully, a fabrication. Rather than the innocent victims claimants portray themselves to be, the claimants are veteran con artists who have left behind them a string of lawsuits for allegedly defrauding parties (including one by a bank for allegedly overdrawing an account), bankruptcies arising from several home repair businesses, and an injunction obtained by the Illinois Attorney General forbidding claimant Robert Sam ("Mr. Sam") from engaging in the very business he alleges was "recently" created by him in fulfillment of a "long time dream."

As the claimants themselves make clear, "this case is not about losses in the securities markets" (Statement of Claim, ¶2). Rather, this case concerns damages the claimants allege they sustained as a result of the May 15, 2006 closing of a business checking account claimants held at Edward Jones.[1] The account, which had only been opened five months earlier, was in the name of Northstar Basements, Inc. ("Northstar Basements"), a construction company owned by Mr. Sam and his wife. Northstar Basements is described by the claimants as a custom basement remodeling company focused on residential home renovation and repair.

There is no dispute that Edward Jones closed the Northstar Basements checking account on May 15th. The account was closed after more than a dozen checks were presented against the account which the account did not have sufficient funds available to pay. Beginning in March, 2006 the claimants began incurring fees in connection with each of the checks that was presented with insufficient funds in the account. The claimants were specifically advised that such continued activity would subject the account to possible closure. The account was closed in a manner fully consistent with the customer agreement between the claimants and Edward Jones. Contrary to the allegations in the Statement of Claim, the claimants were promptly notified of the closing of the account (which occurred at the close of business on a Monday).

Without any dispute, earlier in the day on May 15th the claimants had deposited a $5,000 check into the account. As is routine practice with almost every financial institution in the United States, Edward Jones notified the claimants that the funds in the account would be held in the account for a reasonable period of time to ensure that outstanding checks issued before the account was closed would be honored. After the hold period the claimants were allowed to withdraw the remaining funds from the account.

The claimants concede that Edward Jones was "within [its] right to cease doing business" with the claimants and that Edward Jones' "motive for ceasing to do business with the [claimants] was a reasonable one." (Statement of Claim ¶15). Nevertheless, they allege that the closing of the account on May 15th caused grave damage to them personally, "destroyed" their business and "annihilated their credibility in the construction community," credibility they had allegedly built through Northstar Basements and its predecessor company, Symphony Builders. As will be demonstrated below, Mr. Sam could not legally engage in either Northstar Basements or Symphony Builders. And, as discussed below, the public record makes clear that Mr. Sam and his companies have long been devoid of credibility.

Since 2003 Mr. Sam has been the subject of permanent injunction issued by an Illinois court, which prohibits him from engaging in any business in connection with home repair in the state (see Exhibit A). The injunction was issued by the Court in September 2003, and was based

---

1 The claimants held four other small accounts, including two Roth IRA accounts, at Edward Jones during the same period. The only allegation in the Statement of Claim concerning those other accounts is the allegation that at some point after May 15th claimants were told that their Roth IRAs were frozen (Statement of Claim ¶ 12). This allegation is false and the evidence will show that these other accounts were never frozen and the claimants were never told that they were.

on a finding by the Court that Mr. Sam had engaged in multiple acts of consumer fraud in connection with another home construction business he owned, named Shangri-la Construction.

The Court's Order, (which was consented to and signed by Mr. Sam) required Mr. Sam to pay restitution and a fine, and included a Stipulated Final Judgment and Consent Decree, which ordered that he:

> Individually and through any person or business entity or association, as owner, principal or partner, is hereby permanently enjoined from violating Section 2 of the Consumer Fraud Act. Specifically, the Defendant is permanently enjoined from engaging in the trade or commerce of home repair, in that Defendant shall not offer for sale, solicit sales of, or sell home repair services as defined in Section 2(a)(1) of the Home Repair Fraud Act, 815 ILCS 515/2 (2000).[2]

See Exhibit A (emphasis added).

The injunction came less than a year after Mr. Sam had executed an "Assurance of Voluntary Compliance" ("AVC") with the State Attorney General's Office (see Exhibit B). The AVC, signed by Mr. Sam in February, 2003, contained separate findings by the Illinois Attorney General that Mr. Sam had engaged in multiple acts of consumer fraud, this time in connection with two other construction companies he operated, Diamond Nail Construction and Penguin Painting and Tile, Inc. Pursuant to the AVC, Mr. Sam had agreed that he, as well as his

> agents, employees, subcontractors, and all persons or entities associated, affiliated or connected with Respondents, and any successor corporation or business entity, within the State of Illinois, as of the effective date of this AVC, shall not engage in trade or commerce of home repair, in that they shall not offer for sale, solicit sales of, or sell home repair services as defined by Section 2(a)(1) of the Home Repair Fraud Act. 815 ILCS 515/2 (2000).

See Exhibit B.

In addition to Shangri-La Construction, Diamond Nail Construction and Penguin Painting and Tile, Mr. Sam also apparently owned and operated two other construction companies, named

---

2 Pursuant to Section 2(a)(1) of the Act: "Home repair shall include the construction, installation, replacement or improvement of driveways, swimming pools, porches, kitchens, chimneys, chimney liners, garages, fences, fallout shelters, central air conditioning, central heating, boilers, furnaces, hot water heaters, electrical wiring, sewers, plumbing fixtures, storm doors, storm windows, awnings and other improvements to structures within the residence or upon the land adjacent thereto."

Precision Remodel*ers* (emphasis added) and Precision Remodel*ing* (emphasis added). Those two companies (as well as Diamond Nail Construction and Penguin Painting and Tile) were listed by Mr. Sam as debtors in two of the three bankruptcy petitions he and his wife filed in Federal Bankruptcy Court between September, 2001 and February, 2003 (See Exhibits C, D, E). In the bankruptcy petitions the Sams sought to discharge tens of thousands of dollars in debts they had incurred in their own names and in the names of these four construction companies. Those debts ranged from money owed to Zales jewelry store and Home Depot, to money owed to former customers for remodeling contracts.

On top of deliberately withholding information concerning their bankruptcies, failed companies, and flagrant violation of a court ordered injunction barring Mr. Sam from the construction business, the claimants also did not disclose that since March, 2006 Mr. Sam and Northstar Basements have been sued no less than five times in lawsuits filed in Circuit Court in Cook County, Illinois (See Exhibits F, G, H, I, J). Only two of those lawsuits was filed after the claimants filed their Statement of Claim and, significantly, three of them were filed on or before the May 15th closing of the Edward Jones checking account. The claims against Mr. Sam and Northstar Basements in those lawsuits are eerily similar to many of the claims now propounded against Edward Jones in the Statement of Claim, including an action by a subcontractor who alleges that Mr. Sam failed to pay him for work he performed in 2005 (filed in March, 2006, see Exhibit F) and one by customers of Northstar Basements who allege that Sam accepted money from them in 2005 for construction work on their home but failed to complete the work or return their money (also filed in March, 2006, see Exhibit G).

Incredibly, the recently filed court actions include a lawsuit filed by Harris Bank against Northstar Basements, whereby the Harris Bank seeks the recovery of overdrawn funds that were incurred when Mr. Sam issued checks, which Harris Bank paid, although there were insufficient funds in Northstar Basements' account at the bank to cover those checks (See Exhibit K). The Northstar Basements account at Harris Bank was opened in October 2005, just two months before the claimants opened the Northstar Basements account at Edward Jones. By their action Harris Bank now seeks the recovery of some $7,776.79 in overdrawn funds.

It is against this backdrop of unlawful activity and fraudulent business practices that Sam has now sued Edward Jones alleging that the May 15th closing of his checking account "destroyed" his construction business and "annihilated his credibility within the construction industry." Those allegations, like others in the Statement of Claim, are fraudulent and should not be believed.

It is respectfully submitted that the claimants are barred as a matter of law from receiving any recovery based on their law-violative conduct. Their operation of Northstar Basements was in direct and blatant violation of the court order and the claimants should not in any way be permitted to profit from that violation. In any case, as discussed herein and will be further exemplified at the hearing, the claimants' long history of fraud, deceit, wrongful conduct and questionable business practices completely eviscerates their claim that they or their company

were injured because Edward Jones closed their checking account after they bounced more than a dozen checks.

## COUNTERCLAIM FOR ATTORNEYS FEES AND COSTS

Edward Jones hereby moves for an award of fees (including attorneys fees) and costs in this action. In light of their ongoing illegal enterprise the claimants (or their counsel) knew full well that they were barred by law from obtaining an award in this case. Their decision to nevertheless file a blatantly false and misleading claim and attempt to conceal the illegality of their conduct, constitutes a fraud on this Panel and this forum.

Edward Jones has incurred significant costs in time and expense in investigating and responding to this fraudulent claim. In light of the egregiously false nature of the Statement of Claim, as well as the claimants' knowing and deliberate acts in filing it, we respectfully request that the Panel exercise its authority and award Edward Jones its fees and costs incurred in connection with this action. Such an award is clearly warranted under the circumstances.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Claimants' actions are barred as a matter of law.

### Second Affirmative Defense

Claimants, by their own conduct and the circumstances of this case, are estopped from asserting the claims being made herein.

### Third Affirmative Defense

Respondents' actions or inactions are not the proximate cause of claimants' alleged damages, if any.

### Fourth Affirmative Defense

To the extent the statement of claim seeks damages for any alleged violation of the Rules of the NYSE or any other securities industry self-regulatory organization, the Statement of Claim fails to state a claim upon which relief may be granted. There is no private right of action for any alleged violation of the rules of such self-regulatory organizations. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 200 (3rd Cir. 1990).

### Fifth Affirmative Defense

Claimants made certain representations and warranted certain information to Respondents. Claimants are estopped from seeking recovery from Respondents on the basis of allegations that are inconsistent or contrary to those representations and warranties upon which Respondents reasonably relied.

**Sixth Affirmative Defense**

Claimants' purported causes of action are barred as against Respondents by the doctrine of unclean hands.

Based on the foregoing, the Statement of Claim should be dismissed in all respects and the Panel should enter an award in favor of Edward Jones on its Counterclaim.

Respectfully submitted

Christopher Lewis
Special Counsel

CL
Attachments
cc: Kirk Smith, Esq., attorney for claimants